## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

SECURITIES AND EXCHANGE
COMMISSION,

          **Plaintiff,**

   v.

CHRISTOPHER FREEMAN BROGDON,

          **Defendant,**

   -and-

CONNIE BROGDON, et al.,

          **Relief Defendants.**

Civil Case No. 15-civ-8173

[Proposed] Order Approving
Plan for Disposition or
Refinancing of Properties and
Payment of Investors in
Furtherance of Settlement as
to Defendant Christopher
Freeman Brogdon and
Relief Defendant Connie
Brogdon

This matter having been opened to the Court by way of the motion (the "Motion") of Defendant Christopher F. Brogdon and Relief Defendant Connie Brogdon, by their attorneys Robert J. Kipnees of Lowenstein Sandler LLP and Tony G. Powers, Stephen D. Councill and Joshua P. Gunnemann of Rogers & Hardin LLP for an Order approving the Plan, initially prepared and presented by Defendant and reviewed and approved by the court-appointed Monitor, Soneet Kapila (the "Monitor"), for the disposition or refinancing of all or part of Defendants' assets, as needed, to redeem the outstanding bonds and private placement offerings identified in Exhibit B to the Judgment entered by this Court on December 28, 2015 (ECF No. 58), on notice to plaintiff Securities and

1

Exchange Commission; and the Court having considered the submissions, and for good cause shown; and

WHEREAS, the Securities and Exchange Commission ("Plaintiff" or "Commission"), filed a Complaint on November 20, 2015 (the "Complaint"), and the Commission that same day having filed an Order to Show Cause seeking emergency relief; and

WHEREAS, the Court entered the Order to Show Cause on November 20, 2015 granting a temporary restraining order, an asset freeze, expedited discovery and other relief against defendant Christopher Freeman Brogdon ("Defendant"), and granting an asset freeze, expedited discovery and other relief against Relief Defendant Connie Brogdon ("Relief Defendant Connie Brogdon"); and granting expedited discovery against the other named relief defendants; and

WHEREAS, Defendant and Relief Defendant Connie Brogdon entered a general appearance, and the Court having personal jurisdiction over Defendant and Relief Defendant Connie Brogdon, and subject matter jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21(d), 21(e), and 27 of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d), 78u(e), and 78aa]; and

WHEREAS, after the evidentiary hearing held on December 11, 2015 on the Commission's request for preliminary injunction pending trial, Plaintiff, Defendant, and Relief Defendant Connie Brogdon reached an agreement for the partial final settlement of this matter and entry of the Judgment as to Defendant Christopher Freeman Brogdon and Relief Defendant Connie Brogdon (the "Judgment") and the Order Appointing Monitor on Consent (the "Monitor Order"), both of which were presented to the Court on December 23, 2015;

WHEREAS, Defendant and Relief Defendant Connie Brogdon executed consents to the settlement, without admitting or denying the allegations of the Complaint (except as to jurisdiction and except as otherwise provided therein in Paragraph XIII) (the "Consents");

WHEREAS, Defendant and Relief Defendant Connie Brogdon waived findings of fact and conclusions of law and any right to appeal from the Judgment, and the Court entered the Judgment and the Monitor Order on December 28, 2015;

WHEREAS, the Judgment requires that Defendant and Relief Defendant Connie Brogdon redeem the outstanding conduit municipal bond offerings listed in Exhibit B to the Judgment by paying the bondholders all accrued interest and principal outstanding and any other amounts required under the bond documents and redeem the private placement offerings listed in Exhibit B to the

Judgment by paying all outstanding principal and interest, and any other amounts as required under the private placement memoranda (the bondholders and investors in the private placements being collectively referred to as the "Investors");

WHEREAS, the Judgment requires further that Defendant propose a plan by no later than thirty (30) days from the entry of the Judgment, subject to approval of the Monitor and of the Court, for the fair, prompt, and efficient disposition or refinancing of all or part of the entities and assets owned or controlled (in whole or in part) by Defendant listed on Exhibit C to the Judgment, as needed, to pay the Investors in full as described in the preceding Subparagraph;

WHEREAS, with approval of the Monitor, Defendant filed a proposed Plan (ECF No. 84), an Amended Plan (ECF No. 100), and a Second Amended Plan (ECF No. 117).  The Monitor has further reviewed and considered the proposed Second Amended Plan and requested certain modifications and corrections.  Defendant has submitted a Third Amended Plan addressing the Monitor's concerns, and the Monitor has approved the Third Amended Plan as revised (the "Plan"), with such approval reflected in the Monitor's separate submission filed with the motion for approval of the Plan;

WHEREAS, the Monitor requested certain analyses of the financial feasibility of the Plan, and Defendant submitted such analyses (the "Cash Flow Projections") and further submitted certain revisions and supplementation as

requested by the Monitor, the Second Revised Cash Flow Projections to be filed

with the Court under seal in connection the approval of the Plan;

WHEREAS, the Court has considered the proposed Plan in light of

the Judgment and the Monitor Order, has considered the Monitor's statement, all

submissions and arguments by Defendant and other relevant materials relating to

the motion and has determined that the Motion is appropriate and should be *held a hearing on July 13, 2016, and considered the objection of Wells Fargo Bank,*

granted and the Plan approved; and

WHEREAS, all capitalized terms used herein shall have the meaning

ascribed to them in the Plan unless otherwise defined in this Order;

IT IS ON THIS DAY OF JULY 19, 2016, ORDERED AS FOLLOWS:

1.    **Approval of the Plan**

The Plan is approved, and Defendant is directed to implement the Plan in

accordance with its terms and under the supervision of the Monitor as required by

the Judgment, the Monitor Order, and this Order and to repay the Investors as

required by the Judgment.  A copy of the Plan, as approved, is attached as Exhibit

A to this Order.  The Court finds, based on the parties' submission and the

Monitor's approval, that the Plan is reasonably calculated to fulfill the objectives

of the settlement.  All procedures set forth in the Plan are approved and authorized,

subject to the Monitor's oversight and approval to the extent required in the

Judgment, the Monitor Order and the Plan.  The terms and conditions of this Order

shall be immediately effective and enforceable upon its entry.

2.     **Effect of Approval of the Plan**

The Court's approval of the Plan shall be deemed to authorize, without further notice or hearing, the Monitor and Defendant, with approval of the Monitor, to take all actions described in or otherwise deemed necessary or appropriate in furtherance of the implementation of the Plan provisions.

3.     **Procedures for Amending Plan**

Defendant may propose amendments to or modifications of the Plan that are consistent with the purposes of the Plan.  Any proposed amendment or modification shall require the consent of the Monitor.  If the Monitor withholds or unreasonably conditions or delays consent, Defendant may seek Court approval to amend or modify the Plan.

4.     **Resolution of Disputes between or among Parties and/or the Monitor**

a.     Any party to this action seeking resolution of a dispute arising under the Plan may seek the Court's assistance in resolving the dispute.

b.     As to disputes regarding the Monitor's or the Defendant's authority to act or the interpretation, construction, application or enforcement of the Judgment, the Monitor Order, or the Plan, on motion, the Court shall review

such disputes under terms of, and the review standards set forth in, the Judgment and the Monitor Order.

      c.    As to disputes arising under subsections (a) or (b) immediately above, prior to moving the Court, the moving party must first confer with counsel for the opposing party in a good faith effort to resolve the matters involved.  If the parties reach an impasse regarding the dispute and are unable to resolve it by agreement, the party seeking relief must certify to the Court that the parties met and conferred to resolve the matter in dispute (or attempted in good faith to do so), but that despite good faith efforts, were unable to resolve the dispute by agreement.

    5.    **Disputes among Indenture Trustees, Borrowing Entities, Investor Entities, Escrow Agents, Investors and Defendants**

      a.    Disputes regarding amount of claim

        i.    All amounts to be paid under the Plan shall be determined with reference to the contractual relationships that exist between and/or among the Borrowing Entities, the Investor Entities, the Indenture Trustees, the Escrow Agent, the Defendant, and the Investors and any final judgments establishing rights of any such parties to any such contractual relationships.

ii.     Any dispute that arises regarding the amounts owed by Defendant, Relief Defendant Connie Brogdon or any Borrowing Entity and to be paid under the Plan may be referred, either by all the parties to the dispute or the Court, to the Monitor, who shall attempt to assist the parties involved in resolving the dispute by agreement.  Any such resolution does not include an adjudication of rights by the Monitor as the Monitor has no adjudicatory powers.  If the Monitor is unable to resolve the dispute within forty-five (45) days after submission of the dispute to the Monitor, the parties in interest may move the Court to resolve the dispute.  The moving party must certify to the Court that, prior to moving the Court, the matter in dispute was referred to the Monitor and, despite good faith efforts, the parties were unable to resolve the dispute by agreement.  All communications by the parties or the Monitor in connection with any attempt at consensual resolution shall be confidential and subject to Federal Rules of Evidence 408.

iii.    If an Investor seeks to contest the amount actually paid to it by the Indenture Trustee, Investor Entity, or Escrow Agent, the Investor may pursue such claim in a court of competent jurisdiction.  Defendant, Relief Defendant Connie Brogdon, the Borrowing Entities and the Monitor shall not be made a party to any such suit and may apply to this Court for an injunction against the maintenance of such an action against them if they are made parties.

b.    Disputes regarding other matters

i.    With respect to any other dispute regarding the interpretation, application, implementation or effect of the Judgment, the interested parties shall first meet and confer and attempt to resolve the dispute in good faith by agreement.

ii.    If the parties are unable to resolve such dispute, the interested parties may present the dispute to the Monitor, who will attempt to assist the parties in resolving the dispute by agreement.  Because the Monitor has no adjudicatory powers, any such resolution does not include an adjudication of rights by the Monitor.

iii.    If the Monitor is unable to resolve the dispute regarding the interpretation, application, implementation or effect of the Judgment within forty-five (45) days after submission of the dispute to the Monitor, the parties may move the Court to resolve the dispute.  The moving party must certify to the Court that, prior to filing any such motion, the matter in dispute was presented to the Monitor and, despite good faith efforts, the parties were unable to resolve the dispute by agreement.  All communications by the parties or the Monitor in connection with any attempt at consensual resolution shall be confidential and subject to Federal Rules of Evidence 408.

6.   **The Monitor**

a.   The Monitor is authorized, but not required, to rely on statements, representations and certifications made by Defendant or any of his professional advisors, or by any Indenture Trustee, Investor Entity, Escrow Agent, or Borrowing Entity incident to any sale or refinance requiring Monitor approval. The Monitor is not required to, but he is entitled to, investigate or independently confirm matters represented or certified to him by Defendant or any of his professional advisors, or by any Indenture Trustee, Investor Entity, Escrow Agent, or Borrowing Entity.  Defendant will promptly provide information reasonably requested in connection with any such approval.

b.   The Monitor's approval of a sale or refinancing of a facility is based on his assumption, and in reliance upon certifications by Defendant required by the Plan, that the facility is being sold or refinanced with proper authority, and based upon documentation provided to him and information certified to him by the Defendant as being true, correct and complete.  The Monitor is authorized to rely, but not obliged to so rely, on representations by Defendant as to whether a transaction has been properly authorized without further investigation and whether any expenditure for which his approval is requested is for the purpose specified in the request.

c.     A sale or refinancing shall be deemed approved by the Monitor if, and to the extent that, the Monitor receives from the Defendant certification of Payment in Full of the Outstanding Securities from the proceeds of the sale or refinancing.

d.     The Monitor's primary role under the Plan shall be to review and approve sale and financing transactions in furtherance of the Plan based upon documents and information presented to him by the Defendant; to review expenditures proposed to be made in connection with the implementation of the Plan, including expenses to operate, repair, maintain, preserve, refinance, market, sell or dispose of any of the Subject Assets, all as provided in the Judgment, the Monitor Order and the Plan; to take such other actions as are authorized or required by the Judgment, the Monitor Order or the Plan; and to report to the Court any violations or material departures from the Plan, the Judgment or any other order of the Court.  The Monitor does not have any duty to determine the ownership of any asset, the validity of any claim or defense, the existence, validity, extent or priority of any lien on any asset of any person or entity, or the authority of any entity to engage or enter into any transaction to be reviewed by the Monitor; to conduct any public record searches; to assure payment of any claim or the proper application of sale or refinancing proceeds to the payment of any claim; to determine the validity, amount or priority of any claim against the Defendant or

11

any entity under the Defendant's direct or indirect control; to disclose to any holder of a claim against Defendant or any entity under his direct or indirect control any information regarding the Plan or its implementation (but may do so, in the Monitor's discretion, subject to any confidentiality undertakings); or to determine whether any sale or financing transaction requiring the Monitor's review and/or approval violates the ownership, lien or other rights of any creditor, equity security holder, or other interested party in or affected by the transaction.

If either Defendant or Relief Defendant Connie Brogdon seeks authorization from the Monitor and the Court in accordance with Paragraph 7 of the Monitor Order to file, or cause to be filed, any petition for relief under any chapter of the Bankruptcy Code with respect to any of the entities listed on Exhibit C to the Judgment, the Monitor shall be authorized to give or refuse his consent or, without doing either, refer the parties directly to the Court for ruling after notice and a hearing in which the Monitor shall be an interested party with standing to be heard and which the Monitor shall attend to provide the Court with any views or recommendations that the Monitor may have regarding the request, including the views or recommendations (if any) that the Monitor may have regarding the venue for any such filing, the chapter of the Bankruptcy Code under which such filing (if made) should be made, and/or the purpose and goals of the relief requested in such

filing (i.e., liquidation or reorganization); and Paragraph 7 of the Monitor Order shall be deemed amended hereby to the extent inconsistent with the foregoing.

      e.    The Monitor is authorized and required to approve payments associated with other litigation and claims, as described in Section 6.10 of the Plan, such as defense costs, judgments, and settlements to the extent payments are to be made from the Subject Assets.  In connection with such approvals, the Monitor is not obligated to evaluate or pass on the merits of any claim or defense, the reasonableness of any defense costs incurred, or the advisability of any settlements or payment plans negotiated.

      f.    The Subject Assets shall be liable for and subject to the payment of all fees and expenses of the Monitor, including reimbursement of professional fees and expenses incurred by the Monitor, and the Monitor's professional advisors at any time (whether incurred prior to or after the entry of the Confirmation Order) in connection with any subpoena, request for document production, deposition, interrogatory, or any other informational request from a third party (each, an "Information Request") relating to the Plan, implementation of the Plan, or Defendant or Relief Defendants, whether the Monitor is required or elects to comply with any such Information Request; provided, however, that all such fees and expenses shall be paid or reimbursed (i) only as and to the extent authorized by the Monitor Order and the "Billing Instructions for Receivers in

Civil Actions Commenced by the U.S. Securities and Exchange Commission"
referenced in the Monitor Order or otherwise allowed by the Court as reasonable
fees and expenses, and (ii) promptly after the entry of an order by the Court
approving the payment or reimbursement of such fees and expenses.

g.      The Monitor shall not be liable to any person or entity,
including, without limitation, the Defendant, and Relief Defendant, or any Investor
for any action taken or omitted to be taken by the Monitor, in good faith, under the
Plan.  The Monitor does not assume any responsibility for any failure or delay in
performance by Defendant of any aspect of the Plan; does not make any express or
implied representation, warranty or guarantee regarding implementation of the
Plan; shall be entitled to act, and shall not be liable for acting or refraining to act,
upon any representation, warranty, certification, affirmation, documentation, or
communication in whatever form believed by the Monitor, in good faith, to be
genuine and correct and to have been signed, sent or made by Defendant,
Defendant's counsel or any other proper person.  The Monitor may consult with
and employ legal counsel to advise the Monitor concerning the Monitor's
obligations, rights and remedies, and shall be entitled to act, and shall not be liable
for acting or refraining to act, in good faith reliance upon any advice given by such
legal counsel.

h.      By approving any sale, refinancing or other transaction

14

contemplated by the Plan, the Monitor does not represent, warrant or affirm that any such sale, refinancing or other transaction is legally valid, enforceable, duly authorized by the parties thereto or compliant with any applicable law.

i.     The Monitor shall be authorized to submit to the Court and/or the Commission such status reports regarding Defendant's implementation of the Plan as the Monitor deems advisable in his sole discretion.

j.     Subject to the limitations of any confidentiality agreement between the Monitor and Defendant, the Monitor shall be permitted, but shall not be obligated or required, to respond to inquiries and other information requests from persons purporting to be Investors or creditors or representatives of Investors or creditors of Defendant, Relief Defendant Connie Brogdon or any of the entities listed in Exhibit C to the Judgment.

k.     Nothing in the Plan or this Order Approving Plan shall be deemed to limit the ability of the Monitor to seek any order he deems advisable from the Court.

7.    **Effect of Plan Confirmed by Court Order; Confirmation**

a.     Neither the Plan, Order Approving Plan, nor any act performed or document executed pursuant to or in furtherance of the Plan: (a) is, may be deemed to be, or may be used as evidence of any presumption, concession, or

admission by Defendant, Relief Defendant Connie Brogdon, any Borrowing Entity or any entity otherwise affiliated with any of them, with respect to the truth of any allegations by the Commission or the validity of any claim, or of any wrongdoing, liability, negligence, or fault of Defendant, or (b) is, may be deemed to be, or may be used as evidence of any presumption, concession, or admission of any fault, misrepresentation, or omission of Defendant in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

b.      Defendant and Relief Defendant Connie Brogdon may file the Judgment, this Order Approving Plan and/or the Confirmation Order from this action in any other action in which they or either of them is a party or that may be brought against them in order to support a defense, claim, or counterclaim based on principles of payment, satisfaction of a debt, virtual representation, res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory asserting issues arising from or relating to satisfaction, payment, virtual representation, claim preclusion or issue preclusion or other defense or counterclaim that is or may be available in the matter.

c.      The Plan is intended to accomplish payment in full to the Investors arising from their investments in the Outstanding Securities and resolve claims arising from Outstanding Securities, provided that it is not intended to affect any equity interests of Investors in Investor Entities, or of an Investor Entity in a

16

Borrowing Entity, or any rights to payment based on such equity interests. Except as provided, the Plan is meant to result in final and complete payment of amounts owed under the Outstanding Securities and, in the case of bonds, complete payment of amounts due under the Trust Indentures. To the extent certain Outstanding Notes have been reduced to judgment, payment of that judgment in accordance with its terms shall constitute satisfaction of the amount owing under the Plan to the extent the judgment is based on principal, interest, or other right to payment that has accrued through the time of the judgment, arising from the Outstanding Notes. Any and all security interests and other liens securing bonds and notes will be released upon payment of the requisite Cash amount to the holders of such claims in accordance with the Plan and subject to satisfaction of all other obligations to the holders of the Outstanding Securities. The Plan does not seek to alter Defendant's obligations in connection with the Outstanding Securities, but rather is intended to provide a mechanism by which Defendant will satisfy these obligations.

    d.  Defendant expects implementation of the Plan to be substantially complete by December 31, 2017 ("Completion Date") and commits to a good faith effort to achieve that goal. Defendant may seek a one-time extension of the Completion Date from the Monitor for twelve (12) additional months. Defendant may seek further extensions from the Court for good cause shown.

The execution of the Plan, and the timetable for that execution, are based upon assumptions embodied in the Second Revised Cash Flow Projections filed by the Defendant with the Court under seal in connection with the filing of the Third Amended Plan.  The Second Revised Cash Flow Projections are inherently based on assumptions and estimates, and represents the Defendant's reasonable estimate of cash flow resulting from operations and sales of the facilities and timing for the repayment of Investor claims.

Defendant will diligently and in good faith seek to implement the steps outlined in the Plan in the manner and on the timetable contemplated by the Second Revised Cash Flow Projections.  However, given the complexity of multiple sales and refinancings required to repay Investor claims, there can be no assurances that the timetable contemplated will be strictly adhered to in all cases.

8.  **Confirmation Order**

a.  Upon completion of the Plan, Defendant may move the Court for an order confirming completion of the Plan and satisfaction of Defendant's obligations with respect to the Outstanding Securities that are within the scope of the Plan.  Defendant shall provide notice of such motion to the Monitor, the Commission, the Indenture Trustees, the Escrow Agent, and Investor Entities.  If the Court determines that Defendant has complied with Plan and paid all amounts required by the Judgment and the Plan, then Defendant shall be entitled to an order

establishing compliance and completion of the Plan ("Confirmation Order").

      b.    The Monitor shall be discharged from all duties upon entry of the Confirmation Order or pursuant to such other order as the Court may enter.

      c.    Upon entry of the Confirmation Order, (1) the Monitor shall be deemed to have fulfilled and performed all his obligations under the Monitor Order and any additional orders of the Court related to the Plan, the Monitor Order, or the Judgment (collectively, the "Relevant Monitor Orders"), and (2) the Monitor and his attorneys, accountants, consultants and other professionals, and all persons acting by, through, under, or in concert with any of them (the "Released Parties") shall be released from, and not be liable to any person or entity for, any or all claims, demands, actions or causes of action based upon any actions taken or omitted by the Released Parties in connection with the Relevant Monitor Orders or the Plan, except on a finding by this Court that he, she, it or they acted or failed to act as a result of bad faith or gross negligence or in reckless disregard of his, her, its or their duties.

      d.    Defendant may rely on the Confirmation Order in any subsequent proceeding by an Indenture Trustee, Escrow Agent, Investor Entity or Investor to establish payment and satisfaction of Defendant's obligations arising from or with respect to any of the Outstanding Securities.

9.    **Injunction Against Interference with Plan**

a.    The Court having assumed and retained jurisdiction, to the extent set forth herein, over the properties, rights and obligations of the Defendant and Relief Defendant Connie Brogdon falling within the scope of this action, the Judgment and the Plan, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further order of this Court: all civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, receivership proceedings, arbitration proceedings, foreclosure actions, default proceedings, contract or collection actions, or other actions relating to, arising from or involving any right claimed under, in connection with, or relating to any alleged right or interest of a current holder (as of the entry of the Judgment) of Outstanding Bonds or Outstanding Notes or any agreement relating thereto against:

i.    the Monitor, in his capacity as Monitor;

ii.    any of the Borrowing Entities and their parents, subsidiaries or affiliates, wherever located;

iii.    any of the Borrowing Entities' past or present officers, directors, managers, agents, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any

nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise;

      iv.     Saint Simons;

      v.     Winter Haven Homes, Inc.;

      vi.     Brogdon Family L.L.C.

      vii.     the Defendant or Relief Defendant Connie Brogdon;

      viii.     Named or specified property, assets or accounts owned or controlled by Defendant, Relief Defendant Connie Brogdon, any Borrowing Entity or any of their parents, subsidiaries, affiliates or management companies; or

      ix.     Any Segregated Account (such proceedings as listed in subparts (i)-(ix) of this Paragraph are hereinafter referred to as "Ancillary Proceedings" and the identified parties to such Ancillary Proceedings are referred to as "Covered Parties").

      b.     The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

      c.     Parties in interest may petition the Court for relief from the injunction entered in this Order upon an appropriate showing of necessity for such

relief and the inadequacy of the remedy provided in this matter.  Further, as to a

cause of action accrued or accruing in favor of or against a Covered Party or

against or in favor of a third person or party, any applicable statute of limitation is

tolled during the period in which this injunction against commencement of legal

proceedings is in effect as to that cause of action.

       d.    Notwithstanding the foregoing, the bankruptcy case known as

*In re National Assistance Bureau, Inc.,* et al., civil action no. 15-69786-mgd,

pending in the Northern District of Georgia, is not stayed by the Plan or this Order

Approving Plan.

       e.    Notwithstanding the foregoing, subpart (a) of this Section does

not apply to actions or proceedings against any underwriters, broker-dealers, or

placement agents that offered, purchased, or sold the Outstanding Securities, or the

associated persons of such entities.

## 10.    Retention of Jurisdiction by the District Court

For purposes of the Plan and any related actions and proceedings, the

properties, rights and obligations of the Defendant and Relief Defendant Connie

Brogdon falling within the scope of this action, the Judgment and the Plan, and

specifically including the accounts, facilities and entities identified in Exhibits A

and C to the Judgment and the assets listed in the December 9, 2015 Declaration of

Christopher F. Brogdon, as referenced and incorporated in Paragraph XII(2) of the Judgment, as amended, shall be deemed to be in the custody and control of this Court. Prior to and following entry of this Order Approving Plan, this Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Plan for, among other things, the following purposes:

      a.     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the implementation, enforcement or consummation of the Plan or this Order Approving Plan, including by commencement or pursuit of an action or proceeding that might interfere with the execution and completion of the Plan.

      b.     Construe, take any action, and issue such orders as may be necessary for the enforcement, implementation, execution, and consummation of the Judgment, the Monitor Order, the Plan and all contracts, instruments, and agreements created in connection with the Plan for the maintenance of the integrity of the Plan and the protection of Defendant, Relief Defendant Connie Brogdon, Investors, the Indenture Trustees, the Investor Entities, the Borrowing Entities and the Monitor from multiple and/or inconsistent obligations or proceedings.

      c.     Hear and determine any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Judgment, the Monitor Order, the Plan, this

Order Approving Plan, or the Confirmation Order and any person's or entity's rights arising under or obligations incurred in connection therewith.

       d.    Hear any application from the parties, the Monitor or any other party in interest to modify the Plan, this Order Approving Plan or the Confirmation Order, to remedy any defect or omission, or to reconcile any inconsistency in any order, the Plan or any contract or other agreement or document created in connection with the Plan.

       e.    Enter and implement any orders as are necessary or appropriate if this Order Approving Plan or the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated.

       f.    Determine and resolve any and all controversies relating to the rights and obligations of any Disbursing Agent, Indenture Trustee, Investor Entity, Investor, Borrowing Entity, Defendant or Relief Defendant Connie Brogdon in connection with the consummation, interpretation, implementation or enforcement of the Plan.

       g.    Grant or deny any application for allowance of compensation or reimbursement of expenses by the Monitor, his attorneys and any other retained professionals.

       h.    Hear and resolve any motion for an order confirming successful completion of the Plan.

       i.     Hear and resolve such other matters and for such other purposes as may be provided in the Confirmation Order.

Notwithstanding the foregoing, if any bankruptcy proceeding is commenced in accordance with Paragraph 7 of the Monitor Order, then all property and assets belonging to the entity subject to the bankruptcy proceeding shall be deemed released from the jurisdiction of the Court and become vested as property of the debtor's estate in the bankruptcy proceeding.

11.   **Conflicts between Provisions**

To the extent any terms of this Order Approving Plan are inconsistent with the Judgment, the terms of this Order Approving Plan control and the Judgment is so modified.

Hon. Kevin McNulty
United States District Judge