Robert J. Kipnees, Esq.
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.597.6220
Facsimile:  973.597.6221

Tony G. Powers, Esq.
Stephen D. Councill, Esq.
Joshua P. Gunnemann, Esq.
**ROGERS & HARDIN LLP**
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
*(Admitted Pro Hac Vice)*

*Attorneys for Defendant and Relief
Defendant Connie Brogdon*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER FREEMAN BROGDON,**<br><br>Defendant,<br><br>-and-<br><br>**CONNIE BROGDON, et al.,**<br><br>Relief Defendants. | **Civil Case No. No. 2:15-cv-08173-KM-JBC**<br><br>Response to BOKF, N.A.'s Motion for an Injunction or, in the Alternative, for Relief from Injunction |

Robert J. Kipnees, Esq.
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.597.6220
Facsimile:  973.597.6221

Tony G. Powers, Esq.
Stephen D. Councill, Esq.
Joshua P. Gunnemann, Esq.
**ROGERS & HARDIN LLP**
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
*(Admitted Pro Hac Vice)*

*Attorneys for Defendant and Relief
Defendant Connie Brogdon*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER FREEMAN BROGDON,**<br><br>Defendant,<br><br>-and-<br><br>**CONNIE BROGDON, et al.,**<br><br>Relief Defendants. | **Civil Case No. No. 2:15-cv-08173-KM-JBC**<br><br>Response to BOKF, N.A.'s Motion for an Injunction or, in the Alternative, for Relief from Injunction |

Defendant Christopher F. Brogdon and Relief Defendants Connie Brogdon, Brogdon Family LLC, Gordon Jensen Healthcare Association, Inc., Mobama Nursing, LLC, Saint Simons Healthcare, LLC, Winter Haven Homes, Inc., and National Assistance Bureau, Inc. (collectively, "Defendants"), hereby file this response to BOKF, N.A.'s Motion for an Injunction or, in the Alternative, for Relief from Injunction. Defendants do not oppose the injunctive relief requested by BOKF. In their settlement with the SEC, Defendant Christopher Freeman Brogdon and Relief Defendant Connie Brogdon agreed to pay in full the investors in the bonds and notes that are the subject of this action; the two investor actions that BOKF asks to stay seek to recover for the same injuries and would likely interfere with the completion of the Plan to repay investors in this matter. Defendants do oppose the alternative relief sought, the lifting of this Court's injunction prohibiting actions against the Brogdon-related parties so that they may be joined in the actions filed against BOKF. The justifications for the injunction entered by the Court continue unabated, and the injunction should be maintained.

## Introduction

On December 28, 2015, this Court entered the Consent Judgment (Dkt. 58) embodying the settlement between the Plaintiff Securities and Exchange Commission ("SEC") and Defendant Christopher Freeman Brogdon and Relief Defendant Connie Brogdon (collectively, the "Brogdons"). The key element of the settlement is the Brogdons' undertaking and commitment to devise and execute a plan to pay in full each and every bondholder or noteholder holding securities issued in one of the outstanding offerings challenged by the SEC. In pertinent part, the Judgment states:

> Defendant and Relief Defendant Connie Brogdon shall redeem the outstanding
> conduit municipal bond offerings listed in Exhibit B to this Judgment by paying
> the bondholders all accrued interest and principal outstanding and any other
> amounts required under the bond documents. Defendant and Relief Defendant

> Connie Brogdon shall redeem the private placement offerings listed in Exhibit B to this Judgment by paying all outstanding principal and interest, and any other amounts as required under the private placement memoranda (the bondholders and investors in the private placements being collectively referred to as the "Investors").

Consent Order at ¶ XII. The Judgment further states the purpose and mechanism of the Plan:

> Defendant shall propose a plan (the "Plan"), subject to approval of the Monitor and of the Court, for the fair, prompt, and efficient disposition or refinancing of all or part of the entities and assets owned or controlled (in whole or in part) by Defendant listed on Exhibit C to this Judgment, as needed, to pay the Investors in full as described in the preceding Subparagraph by no later than thirty (30) days from the entry of this Judgment.

*Id*.

The Consent Judgment thus requires that the Brogdons pay in full all investors in all of the outstanding offerings at issue in this matter. Moreover, the Consent Judgment contemplates a liquidation process extending over some period of time and provides for the appointment of a Monitor responsible to the Court to oversee the process. *Id.* As the Court is aware from the Monitor's reports, the process contemplated by the Consent Judgment has now been underway for some months, and a number of properties identified in the Judgment have been sold and repayments to investors have commenced where possible. Moreover, the process undertaken has proven to be a very expensive and time-consuming one. *See, e.g.,* Docket Nos. 168-171 (third quarterly fee applications by monitor, monitor's staff and counsel). Needless to say, the attention and energy of Defendant Christopher Brogdon and his counsel have been substantially consumed by the Plan process. The Monitor and his counsel have also invested substantial time in the Plan and incurred substantial expense, all to be borne by Defendant. *See id*

In recognition of, among other things, the time and extraordinary expense required to effectuate the settlement, including both the liquidation of senior living properties and repayment of investors, the Court entered an injunction to prevent interference as part of its Order

3

Approving Plan entered on July 19, 2016 (Dkt. 133) at §10.06. In particular, the Court ordered all actions arising from the same subject matter of this action against Defendant Christopher Brogdon, the Relief Defendants and any Borrowing Entity in any of the offerings (as defined in the Plan), among other parties, to be stayed:

> The Court having assumed and retained jurisdiction, to the extent set forth herein, over the properties, rights and obligations of the Defendant and Relief Defendant Connie Brogdon falling within the scope of this action, the Judgment and the Plan, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the Commission related to the above-captioned enforcement action, are stayed until further order of this Court: all civil legal proceedings of any nature . . . relating to, arising from or involving any right claimed under, in connection with, or relating to any alleged right or interest of a current holder (as of the entry of the Judgment) of Outstanding Bonds or Outstanding Notes or any agreement relating thereto.

*Id.* By its plain terms, the injunction prevents plaintiffs in the two suits against BOKF, the *Elliot* and *Burn Rose* matters,[1] from bringing any action relating to or arising under the bond or note documents against, among others, the Brogdons or the Borrowing Entities which are the conduit issuers. The *Burn Rose* and *Elliot* actions assert claims arising under or relating to the obligations created by the bond or note documents. The injunction presently does not prohibit actions against BOKF, but it does prevent both the plaintiffs and BOKF from asserting claims against the defendants in this matter. The Court did, however, retain jurisdiction to consider further injunctive measures that might be required to prevent interference with the Plan. Order Approving Plan at §11.01.A.

---

[1] BOKF's motion, as discussed below, was triggered by the filing of two private civil actions against it against by investors in the offerings at issue in this matter: (i) *Elliott v. BOKF, N.A.*, Case No. 16-cv-05218-KM-JBC (D.N.J.) (McNulty, K., U.S.D.J.) litigation that is currently pending before this Court; and (ii) *Burn Rose, LLC v. BOKF, NA*, Case No. 2016-03325, in the District Court of Tulsa County, Oklahoma. These actions are referred to collectively as the "BOKF Actions." In apparent recognition of this Court's injunction, the BOKF Actions do not name any of the Brogdon-related parties identified in the injunction.

4

In its motion, BOKF asks the court to extend the injunctive relief entered to prevent the plaintiffs from prosecuting the *Elliot* and *Burn Rose* matters to avoid interference with the Plan, pointing out, among other things, that it serves as indenture trustee on the majority of the offerings involved in this matter and further that allowing discovery against the Brogdon-related parties would itself interfere with the Plan. Alternatively, BOKF asks the Court to lift the injunction to allow it either to join or take discovery from the Brogdon-related parties if the investor actions should be allowed to continue.

The Brogdons do not oppose BOKF's request that the injunction be extended to the BOKF Actions. While BOKF is in a different posture than the Brogdons due to the Brogdons' agreement with the SEC in the Consent Order to repay the investors in full, nevertheless, to the extent the ongoing litigation of the BOKF Actions affect the Brogdons and distracts them from using their limited time, resources and attention to the implement the Plan and repay investors, then the Court has the authority to and properly may enjoin prosecution of the BOKF Actions. It is reasonably foreseeable that the BOKF Actions will interfere with the present actions as a result of the parties in the BOKF Actions seeking discovery from the Brogdon's and the Brogdon-related actions and will thus impose a burden on the already limited cash resources of the Defendant.

This concern is particularly heightened and acute at this point in time. As the monitor has mentioned in his recent report, the Plan is making progress toward its goal of redeeming all securities, but liquidity continues to be a pressing and immediate concern. Monitor's Third Quarterly Report at 5-6 (Dkt. 162-1) ("Liquidity continues to be a primary concern.") The Brogdons continue to devote substantial resources, time, and

energy to the success of the Plan, but the expense and distraction of defending against third party claims or responding to discovery as a third party to the BOKF Actions could seriously take away from the limited resources that are essential to the ultimate success of the Plan.

This burden and expense imposed by the litigation of the *Burn Rose* and *Elliot* is unnecessary because this action will accomplish the objective of paying the investors in full with respect to claims arising under the bonds and notes. However, if the injunction is not extended to include BOKF, the Brogdons do oppose lifting the injunction in any regard as to them. The BOKF Actions and the potential claim over by BOKF against the Brogdons are exactly the type of actions the injunction intended to prevent.

## Argument

I. **The Court Has Authority to Enjoin the *Elliot* and *Burn Rose* Actions.**

BOKF correctly points out that this Court has the authority to enjoin the *Elliot* and *Burn Rose* actions. *See* BOKF's Memorandum of Law in Support of its Motion for an Injunction or in the Alternative, for Relief from Injunction ("BOKF Mem."). In addition to the authorities cited under the All Writs Act, 28 U.S.C. §1651, ample authority under the securities laws establishes the Court's authority to stay actions that would interfere with the Plan.

"Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation [or here, settlement of a claimed violation], the court possesses the necessary power to fashion an appropriate remedy." *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir. 1972). Thus, courts may grant ancillary equitable relief even where not authorized by statutory law, and "[i]t is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded." *Manor Nursing Centers*,

458 F.2d at 1103 (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 433 (1964). *See also S.E.C. v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980) ("The Supreme Court has repeatedly emphasized the broad equitable powers of the federal courts to shape equitable remedies to the necessities of particular cases, especially where a federal agency seeks enforcement in the public interest."). The grant of ancillary equitable relief by appointing the Monitor and ordering Defendant to devise and implement the Plan to repay Investors with the Monitor's involvement and subject to his approval, for example, fall well within the Court's equitable powers.

The district courts' authority to issue litigation stays in connection with securities cases is well established, at least in cases where, as here, the district court has exercised control and jurisdiction over a defendant's property. As one appellate court has described this broad authority in the receivership context: "It is axiomatic that a district court has broad authority to issue blanket stays of litigation to preserve the property placed in receivership pursuant to SEC actions." *SEC v. Stanford Int'l Bank Ltd.,* 424 F. App'x 328 (5th Cir. 2011) (citing *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985); *SEC v. Wencke*, 622 F.2d 1363, 1372 (9th Cir. 1980)). [2] Numerous other courts, including the Third Circuit, agree. *See, e.g., United States v. Acorn Tech. Fund, L.P*., 429 F.3d 438, 441 (3d Cir. 2005) (affirming district court's refusal to lift litigation stay); *S.E.C. v. Vescor Capital Corp.*, 599 F.3d 1189, 1191 (10th Cir. 2010) (holding that district court acted "well within its equitable authority and discretion in denying intervenor's motion to lift litigation stay); *S.E.C. v. Bliss*, No. 2:15-CV-00098-RJS, 2015 WL 7013631, at *2 (D. Utah Nov. 12, 2015) (noting court's authority to impose a litigation stay). *See also Wencke*, 622 F.2d at 1370 (collecting cases).

---

[2] The Ninth Circuit in *Wencke* reached the same conclusion: "[W]e hold that a district court in an SEC enforcement action may, upon an appropriate showing of necessity, stay proceedings against a court-imposed receivership, and that such a stay can be made effective against persons not parties to the SEC action who have notice of the stay." *Wencke*, 622 F.2d at 1371.

7

The injunction entered by the Court in approving the Plan is in the heartland of the equitable authority recognized in the cases cited. This same authority could, in an appropriate case, justify an injunction against one in the position of BOKF as indenture trustee. This is particularly true since the Plan itself is designed to compensate the injuries claimed by the plaintiffs in the BOKF actions.

The involvement of the Brogdon parties in the *Elliot* and *Burn Rose* cases would create a substantial and unjustified hardship. At present, the Brogdon-related defendants are working to create liquidity to fund the Plan as the Monitor has pointed out in his reports to the Court and as Defendant acknowledged in the Plan. As stated in the Letter Brief supporting approval of the Plan at 8 (Dkt. 84) (the "Letter Brief"), three creditors holding Notes have reduced their claims to judgment and have threatened collection action. The plaintiffs in the *Elliot* and *Burn Rose* matters similarly seek to pursue their claims against BOKF, even though the Plan seeks to repay the same obligations as are encompassed within this case. A single investor's seizing cash from the Defendant's operations or imposing substantial litigation burden and expense at this time, as he is building liquidity to support operations and implement the Plan, would be harmful not only to Defendant but to other Investors whose ability to benefit from implementation of the Plan and receive payment in full on their investments might be impaired. The prospect of multiple suits arising from the same obligations that Defendant forecast in the Letter Brief, *supra* at 8, has come to pass, and, with this motion, the need for the injunction against interference is now manifest in this case.

BOKF posits that it would be necessary to join the Brogdon-related parties in the BOKF Actions if they are allowed to proceed against BOKF. BOKF Mem. at 13-14. Should the Court accept that argument, plainly the authorities support granting the injunction requested. There are

8

no special circumstances present here to require any other result. As noted, the BOKF Actions are targeted at recovering for the very same injuries that are subject of the SEC's action, and any recovery would be duplicative of the repayment contemplated by the Plan. Moreover, BOKF correctly points out that even discovery against the Brogdon-related parties would be a sufficient interference with the Plan to support continuation of the existing injunction and its invocation to prevent discovery. *Id.* at 10-11 (citing cases).

Even if joinder of the Brogdon-related parties in *Elliot* and *Burn Rose* is not permitted, as it should not be, the risk of interference with the Plan is a realistic concern. BOKF itself is the indenture trustee on twelve of the offerings at issue. To the extent that the investor actions distract from its duties in administering the payment obligations under the Plan, an injunction would be justified. Moreover, as noted, there is a risk that the ongoing litigation would impact the Brogdon-related parties by discovery or otherwise.

The Brogdons thus do not oppose the BOKF's request to extend the injunction to the BOKF Actions.

## II.     The Court Should Not Lift the Injunction against Interference with the Plan.

As demonstrated above, the injunction entered lies in the core of the Court's equitable authority: it enjoins all "civil proceedings of any nature . . . relating to, arising from, or involving" any rights of holders of the bonds and notes at issue in this case in order to protect the Plan estate and preserve Defendant's assets for repayment to investors pursuant to the Plan. Order Approving Plan at §10.06. The investor actions are exactly the type of action for which the injunction was intended. Similarly, any claim over by BOKF in the investor actions would present the same issues and concerns. In approving the Plan, the Court heard and overruled the objections of Wells Fargo, indenture trustee on another of the offerings, to both the Plan and the

injunction. *See* Wells Fargo's Objection to Amended Plan Pursuant to Paragraph XII(2) of the December 28, 2015 Judgment at 9-11 (Dkt. 116). The Court should similarly dispose of BOKF's effort to lift the injunction.

BOKF's argument for lifting the injunction centers on its claim that presence of the Brogdon parties is "necessary" for the litigation of the claims in the investor actions. BOKF Mem. at 13-14. Rule 19, Fed. R. Civ. P., would not, however, require such joinder in this case, and its argument is in error. It is settled law that parties in the position of alleged joint tortfeasors are not required to be joined, and a Plaintiff may proceed against any of them:

> Under generally accepted principles of tort law, the liability of joint tortfeasors is both joint and several. The 1966 amendment of Rule 19 does not alter the long standing practice of not requiring the addition of joint tortfeasors. Thus, plaintiff may sue one or more of them without joining the others. Illustratively, in a shareholder action claiming that several officers in an entertainment corporation had fraudulently induced plaintiffs into an agreement to sell their shares, the court held that the former general counsel of the corporation who allegedly had participated along with the other officers was not an indispensable party and did not have to be joined.

C. Wright, A. Miller, et al., 7 *Federal Practice and Procedure* §1623. This principle has been applied in cases involving securities claims. *See, e.g., Resolution Trust Corp. v. Stone*, 998 F.2d 1534, 1550 (10th Cir. 1993) (In securities and RICO case, parent and subsidiary were joint tortfeasors and joinder of subsidiary was not required); *Morgan Guar. Trust Co. of New York v. Martin*, 466 F.2d 593 (7th Cir. 1972) (Joinder not of broker not required despite risk of double liabilities and claim of impairment of securities law claim without joinder); *Thayer/Patricof Education Funding, L.L.C. v. Pryor Resources, Inc.*, 196 F.Supp.2d 21 (DDC 2002) (action for breach of contract, misrepresentation, fraud, and securities laws violations; officer and firm were at the most joint tortfeasors, the court could afford complete relief against the parties named, and any right to contribution would arise after judgment was rendered).

10

To the extent that BOKF asserts its desire to pursue a contribution claim against the Brogdon-related parties, its argument does not support lifting the injunction already in place. First, limitations are tolled for claims against the Brogdons arising from the securities at issue in this case during the period that the Plan is in place. Order Approving Plan at §9(c). Second, it is hornbook law that contribution claims do not actually vest and limitations start to run until judgment is entered against the party seeking contribution. Thus, any claims for contribution may be brought after conclusion of the BOKF Actions. Of course, if the Plan succeeds and investors are paid in full on their investments, the putative plaintiff classes' claims would already be paid.

The same facts that justified the initial imposition of the injunction in this case continue, and BOKF has pointed to nothing other than the commencement of the investor actions to justify its request. But the very purpose of the injunction was to prevent such actions from interfering with the Plan. BOKF's alternative request to lift the injunction should be denied.

## Conclusion

Upon completion of the Plan, Defendant Brogdon will have paid the investors in full. Defendants do not oppose BOKF's request to stay the investor actions against it to recover for the same injuries. For the reasons stated above, Defendants do oppose the request that the injunction entered in this case be lifted and urge instead that it continue as to them and their related entities in its current form.

This 7th day of November, 2016.

Respectfully submitted,

s/ Robert J. Kipnees
Robert J. Kipnees
**Lowenstein Sandler LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: 973.597.6220
Facsimile:  973.597.6221

Tony G. Powers
Stephen D. Councill
Joshua P. Gunnemann
**ROGERS & HARDIN LLP**
229 Peachtree Street, N.E.
2700 International Tower
Atlanta, Georgia  30303
*(Pro Hac Vice Applications Pending)*

*Attorneys for Defendant and Relief Defendant Connie Brogdon*