# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | Civ. No. 15-8173 (KM) |
| Plaintiff, | OPINION |
| v. | |
| **CHRISTOPHER BROGDON,** | |
| Defendant, | |
| and | |
| **CONNIE BROGDON, et al.,** | |
| Relief Defendants. | |

**MCNULTY, U.S.D.J.,**

The Court has entered final judgment against defendant Christopher Brogdon and relief defendant Connie Brogdon (collectively, "the Brogdons"), resulting in the defendants owing some $48 million in disgorgement. (DE 543.) The judgment, entered on January 17, 2020, was payable within 30 days. A substantial portion of the judgment remains unpaid. Plaintiff, the Securities and Exchange Commission ("SEC"), has since sought to execute on its judgment by means of, *inter alia*, writs of garnishment on a variety of entities. This opinion addresses motions filed by the SEC requesting that the Court enter certain orders in support of execution of judgment.

For the reasons discussed below, the SEC's motions are **GRANTED**.

## I.  PROCEDURAL HISTORY

Familiarity with the convoluted history of this matter is assumed. On January 17, 2020, the Court entered final judgment against the defendants in the amount of approximately $48 million. (DE 543.) The Court then issued

1

writs of garnishment against numerous LLCs which are either owned by the defendants or in which the defendants have an interest. (*See, e.g.*, DE 586–607, 639–43.) Many of the garnishees and the defendants objected to the writs, but I denied those objections. (*See* DE 584, 632.) The Brogdons have appealed the denial of those objections to the U.S. Court of Appeals for the Third Circuit.

The SEC then filed motions for turnover, vacatur, and an order forbidding transfer of certain funds (DE 661), as well as a motion for a charging order (DE 666). The Brogdons oppose those motions, which are now fully briefed.

## II. SEC'S MOTION FOR AN ORDER FOR TURNOVER, FORBIDDING THE TRANSFER OF CERTAIN ASSETS, AND VACATUR

### A. Agreed Relief

I first note some limited areas of agreement between the parties. The SEC has requested that the court vacate the writs against Joroby Consulting, LLC (DE 565), Whig Troy, LLC (DE 566), and Regions Bank (DE 641), and to vacate the writ against Calton & Associates, Inc. (DE 575) once Calton has paid the SEC $13.50. (Turnover Mot. at 14–15.) The Brogdons consent. (Turnover Opp. at 14.) I therefore vacate those writs. The parties also have stipulated to the disposition of certain funds held in accounts at garnishees StoneX Financial Inc. and UBS Financial Services, Inc., which I approved, (DE 672.)

The SEC also requests, however, that I enter a turnover order and an order forbidding the transfer of certain assets. The Brogdons do not consent to those requests.

### B. Turnover Order

Federal Rule of Civil Procedure 69 states that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Rule 69 "does not require strict adherence to state procedural law," *Mitchell v. Lyons Professional Services, Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010), and "[s]ubstantial compliance with state procedures may [therefore] be sufficient,"

2

*LNC Invest. Inc. v. Democratic Repub. of Congo*, 69 F. Supp. 2d 607, 611 (D. Del. 1999).

> One such state procedure is found in N.J. Stat. Ann. § 2A:17-63:
>
> After a levy upon a debt due or accruing to the judgment debtor from a third person, herein called the garnishee, the court may upon notice to the garnishee and the judgment debtor, and if the garnishee admits the debt, direct the debt, to an amount not exceeding the sum sufficient to satisfy the execution, to be paid to the officer holding the execution or to the receiver appointed by the court, either in 1 payment or in installments as the court may deem just.

Thus, I am authorized under New Jersey law to direct garnishees to pay the debt either as a lump sum or in installments.

### 1. Turnover of money owed as debts to the Brogdons

The SEC identifies garnishees Brogdon Family LLC, Marsh Pointe Management LLC,[1] Chatahoochee Nursing, LLC, Williams Street Nursing, LLC, and Harris Frank LLC as collectively holding over $5 million owed to Brogdons and requests that they be issued an order directing them to turn over those funds.

The Brogdons object that I cannot order the garnishees to pay because the SEC has "no more rights than [the Brogdons] had" and that, at least for some of the garnishees, the Brogdons had no contractual or other entitlement to compel a lump sum distribution. Specifically, they note that the Brogdon Family LLC's operating agreement restricts distributions to "Net Income for any Fiscal Year" (Turnover Opp. at 5); Harris Frank's operating agreement requires Board of Management approval for distributions (*id.* at 6); and the Brogdon Family and other Georgia LLCs are prohibited by law from making distributions that would render them insolvent under O.C.G.A. § 14-11-40 (*id.*).

The Brogdons' claim based on their inability to compel lump sum distributions is unpersuasive. As the SEC explains, Brogdon Family LLC,

---

[1] The parties submitted a consent order correcting Marsh Pointe's submission indicating that it owed a liability to the Brogdons—in fact, it does not owe the Brogdons any money.

3

Harris Frank, Chattahoochee Nursing LLC, and Williams Street Nursing LLC collectively owe the Brogdons $4.4 million in *debt*. The provisions in those entities' operating agreements, and the Georgia law the Brogdons cite, apply to *distributions*, not debt repayments. The entities can therefore repay the debt owed to the Brogdons; a turnover order is therefore appropriate.

The Brogdon Family LLC objects that it cannot afford to repay its debt because it in turn is owed $7 million by St. Simons Healthcare LLC, which in turn is owed that money by issuers, which in turn have no remaining money because they paid the money to the monitorship after they sold their facilities. The LLC further argues that the SEC would enjoy an unfair double recovery if the LLC paid the money, because the SEC already received the money from the issuers when they sold their facilities.

As the SEC explains, however, there is no evidence that the Brogdon Family LLC's obligation to pay the Brogdons the money owed was predicated on the continued existence of a revenue stream from St. Simons Healthcare LLC. There is also good reason to be skeptical of the Brogdon Family LLC's protestations that it cannot possibly pay the debt without receiving money from St. Simons Healthcare. The SEC notes that the LLC continues to receive millions of dollars a year from a variety of other revenue streams, including contributions from the Brogdons themselves. There is simply no reason to relieve the LLC of any *obligation* to repay simply because one of its expected sources of income has vanished.

Nor would a double recovery result from requiring the Brogdon Family LLC to pay the amount that it owes the Brogdons to the SEC instead. The Brogdons are very far from satisfying the judgment against them. The SEC may recover on its judgment from income streams due to the Brogdons, irrespective of how the Brogdons choose to earmark them. Cash, as the saying goes, is fungible.

None of the entities have provided any reason why they cannot repay the debt in a lump sum. I thus direct that they turn over the amount owed to the Brogdons in a single payment.

### 2. Directed Sale of Stocks Held by Garnishee StoneX

The Court has previously ordered the sale of certain StoneX securities, pursuant to a stipulation between the parties. (DE 672.) That stipulation, however, addressed only a portion of the StoneX stock. The SEC now seeks a sale of the remaining shares. The Brogdons assert that the remainder of StoneX's stock should be sold at a later date, arguing that this would be more economically and commercially reasonable. The SEC, however, demands that the stock be sold now.

There is no economic and commercial reasonability test for the timing of a judgment creditor's efforts to collect money to which it is concededly entitled. If the SEC wishes to compel a sale of the StoneX stock now, it is entitled to an order to that effect. I will order the sale of the remaining StoneX stock.

### C. Order Forbidding Transfer of Certain Assets

N.J. Stat. Ann. § 2A:17-65 permits the court to enter an order forbidding transfer or other disposition of property:

> In aid of execution, the Superior Court upon proof by the oath of the party or his or its agent or attorney or of any other person, showing facts establishing that the judgment creditor has property or any person owes him or it, or holds money or property in possession or action in trust for him or it, or for his or its use over and above such property as is exempt or reserved by law, may make an order forbidding the payment of such debt, or the transfer of such property or money by or to such debtor, or any third person until the further order of the court.

#### 1. Connie Brogdon's IRAs

Connie Brogdon has approximately $66,000 in individual retirement accounts maintained at two garnishee institutions: UBS Financial Services, Inc. and StoneX.

N.J. Stat. Ann. § 25:1-1 specifically governs applications for turnover of certain funds held in trust:

> a. Except as provided in subsection b. of this section, every deed of gift and every conveyance, transfer and assignment of goods, chattels or things in action, made in trust for the use of the person making the same, shall be void as against creditors.

b. Notwithstanding the provisions of any other law to the contrary, any property held in a qualifying trust . . . shall be exempt from all claims of creditors . . . except that:

(1) no exemption shall be allowed for any preferences or fraudulent conveyances made in violation of the "Uniform Fraudulent Transfer Act," R.S.25:2-20 et seq., or any other State or federal law . . . .

Thus, money held in trust, even if ordinarily protected from creditors, is not protected if it is in the trust as a result of a fraudulent conveyance. That fraudulent-conveyance exception in subsection (b)(1) has been held by New Jersey courts to apply to IRAs. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 473–74 (N.J. 1999).

The SEC asks that I enter an order pursuant to N.J. Stat. Ann. § 2A:17-65 limiting the transfer—essentially, freezing—the funds in Connie Brogdon's IRA accounts. The Brogdons counter that no such order preserving the funds for the SEC's benefit is appropriate, because those IRA funds are exempt from garnishment under ERISA. They cite an ERISA provision, 29 U.S.C. § 1056(d)(1), which states that retirement plans "shall provide that benefits provided under the plan may not be assigned or alienated." This section, they argue, has been held by at least one New Jersey court to bar garnishment of retirement funds. (Turnover Opp. at 12 (quoting *Biles v. Biles*, 163 N.J. Super. 49, 52 (Ch. Div. 1978)).)

The SEC does not directly counter this ERISA argument, but sidesteps it. The SEC argues only (a) that the Court may discard state law exemptions, and (b) that in any event, N.J. Stat. Ann. § 25:1-1(b)(1) authorizes garnishment of funds that arrived in the IRA *via* a fraudulent conveyance.

Examining the Brogdons' ERISA argument, I come away with a mix of conclusions. Yes, there is good authority for the proposition that 29 U.S.C. § 1056(d)(1) has the effect of barring garnishment, even if the account was the result of a fraudulent transfer, because courts are loath to imply exceptions. *See United Metal Products Corp. v. National Bank of Detroit*, 811 F.2d 297, 300 (6th Cir. 1987) ("[W]hether an exception should be created [to § 1056] is a

6

question for legislative rather than judicial judgment."). The anti-alienation provisions of Section 1056(d)(1), however, apply to an *employee* retirement account; they do not apply to an *individual* retirement account, *i.e.,* an IRA like this one. *See Patterson v. Shumate*, 504 U.S. 753, 763 (1992) (citing 29 U.S.C. § 1051(6) (which exempts from "this part," which includes § 1056(d)(1), "individual retirement accounts")).

I thus reject the Brogdons' argument that the funds should not be frozen because they would not be available for satisfaction of judgment under the ERISA anti-alienation provision, 29 U.S.C. § 1056(d)(1). That being the case, I default to state law, N.J. Stat. Ann. § 25:1-1(b)(1), which would not bar garnishment of funds in an IRA as the result of a fraudulent transfer. I will therefore grant an order forbidding the further transfer of the funds in Connie Brogdon's IRA account.

### 2. LLC distributions

The SEC also seeks an order forbidding the transfer of funds held by GA Tenn Nursing, LLC. GA Tenn Nursing states that it has segregated distributions payable to the Brogdons and is holding those funds in escrow. The Brogdons claim that an order freezing the funds would therefore be redundant, since those funds are subject to writs of garnishment. The SEC also seeks such an order against all of the other LLCs in the event that they should declare a distribution for the defendants' benefit in the future.

An order forbidding the transfer of such funds appears to be a prudent precaution. If the only objection is that it is redundant due to the writs of garnishment, then it cannot harm any party. I will thus issue the SEC's requested order.

### D. Garnishment Priority Regarding Piedmont Bank

Piedmont Bank has responded to the SEC stating that accounts due to the Brogdons are currently being garnished. The SEC seeks an order for turnover of such funds. The question, say the Brogdons, is one of priority, and a declaration of priority would be premature.

7

N.J. Stat. Ann. § 2A:17-52(a) states that debt garnishments will be "satisfied in the order of priority in which such executions are presented." The Brogdons object to the Court's entering any order of priority, at least until their pending appeal before the Third Circuit is resolved. They do not, however, point to the existence of any stay pending appeal.

As the SEC notes, if Piedmont is required to pay other judgments with higher priority and it is unable to pay the SEC after making those other payments, the turnover order will have no effect. On the other hand, if Piedmont has funds which can be paid to the SEC, then the turnover order would have an effect. Neither scenario, however, implicates the appropriateness of entering a turnover order. In issuing such an order, I do not prejudge the relative priority of the various garnishments with which Piedmont Bank may be required to comply.

### III. SEC'S MOTION FOR A CHARGING ORDER

The SEC moves for a charging order against a number of companies which were identified in an "Entity Activity Report" submitted by the Brogdons' tax preparer. The entities against which the SEC seeks the order are listed at DE 666-2. (*See also* Ex. A to the Charging Order accompanying this Opinion.)

N.J. Stat. Ann. § 42:2C-43 states:

> On application by a judgment creditor of a member, a court may charge the transferable interest of the member with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the limited liability company interest. An action by a court pursuant to this section does not deprive any member of the benefit of any exemption laws applicable to his transferable interest.

Thus, under this provision, I am authorized to issue an order charging these entities with the amount they might transfer to a judgment creditor.

The SEC seeks a charging order against 60 entities listed in DE 666-2.[2] The Brogdons raise a number of objections: (A) this Court lacks personal jurisdiction over the garnished entities; (B) N.J. Stat. Ann. § 42:2C-43 does not authorize charging orders against limited liability companies which are not organized under New Jersey law; (C) the Brogdons have not received distributions from many of the listed entities; (D) many of the entities have already been sold; (E) some of the entities have filed in bankruptcy and are in the process of working through a Chapter 11 plan; (F) the Brogdons do not have an ownership interest in many of the listed entities.

For the reasons stated below, I reject all of these arguments. The SEC's motion for a charging order is therefore **GRANTED**.

### A. Whether the Court Has Personal Jurisdiction Over the Garnishee Entities

The Brogdons assert that I lack personal jurisdiction over the entities listed in DE 666-2. They cite *Steamfitters Union Loc. 420 Welfare Fund v. Direct Air, LLC,* 2020 WL 6131163 (E.D. Pa. Oct. 19, 2020), where the court concluded it could not issue a charging order on a Pennsylvanian's transferable interests held by New Jersey LLCs which did not have minimum contacts with Pennsylvania. The court reasoned that it needed personal jurisdiction over the entities, and not just the Pennsylvania member who had an interest in the entities, to issue the charging order. *Id.* at *3. The Brogdons argue that the entities in DE 666-2 are not formed under New Jersey law, are not physically present in New Jersey, have no contacts with New Jersey, do no business in this State, and do not sell products that enter New Jersey's stream of commerce.

District courts appear to have split on this issue. Contrary to *Steamfitters,* other courts have exercised jurisdiction over foreign LLCs for the purpose of a charging order, finding it sufficient that they possessed

---

[2] The SEC has withdrawn its request for a charging order against one entity on the list, Bama Oaks Retirement LLC. (DE 673.)

jurisdiction over the member whose interest was sought to be charged. *See, e.g., Oberg v. Lowe*, 2021 WL 495043 (D. Kan. Jan. 4, 2021); *German American Capital Corporation v. Morehouse*, 2017 WL 3411941 (D. Md. Aug. 4, 2017). I tend to agree, but it is not necessary to resolve this legal dispute. As courts have repeatedly stated, "personal jurisdiction represents a restriction on judicial power as a matter of individual liberty," *Synthes, Inc. v. Marotta*, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (citing *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–03 (1982). "Given the individual nature of this right, many courts have found that a defendant lacks standing to raise absence of personal jurisdiction on behalf of proposed co-defendants." *Id.* (citing *SmithKline Beecham v. Geneva Pharms.*, 287 F. Supp. 2d 576, 580 n.7 (E.D. Pa. 2002)).

As in the cited cases, the Brogdons are attempting to assert lack of personal jurisdiction on behalf of a non-objecting third party. None of the entities in DE 666-2 have lodged an objection to garnishment based on this Court's lacking personal jurisdiction over them. The Brogdons do not hazard any basis for asserting these entities' rights, but purport to make this argument in their own right. (*See* Charging Opp. at 1 ("Defendant Christopher Freeman Brogdon and Relief Defendant Connie Brogdon . . . file this response"). Since the Brogdons lack standing to raise this defense on behalf of the entities, I reject their argument without reaching the merits of the personal jurisdiction issue.

### B. N.J. Stat. Ann. § 42:2C-43

The Brogdons argue that N.J. Stat. Ann. § 42:2C-43 does not authorize the issuance of a charging order against LLCs which were not established in New Jersey. Their argument goes like this: N.J. Stat. Ann. § 42:2C-43 permits an application for a charging order by a judgment creditor of a "member"; a "member" is defined in the statute as a "person that has become a member of a limited liability company"; a "limited liability company" is defined in the statute as "an entity formed under this act," "except in the phrase 'foreign limited

liability company'"; and "[f]oreign limited liability company' [is defined as] an unincorporated entity formed under the law of a jurisdiction other than this State and denominated by that law as a limited liability company." N.J. Stat. Ann. § 42:2C-2. The Brogdons reason that the definition of "limited liability company" specifically excludes "foreign limited liability company"; the term "members" therefore cannot include membership in a foreign liability company; and that therefore, N.J. Stat. Ann. § 42:2C-43 does not permit a charging order against a foreign LLC.

I find it unlikely that the statutory definitional provision "except in the phrase 'foreign limited liability company'" was intended to limit New Jersey courts from issuing charging orders where appropriate against foreign limited liability companies. While New Jersey authority is lacking, I consider case law from other states which, like New Jersey, have based their local statutes on the Uniform Limited Liability Company Act.[3]

For example, in *Vision Marketing Resources, Inc. v. McMillin Group, LLC*, the District of Kansas considered a Kansas statute which, like N.J. Stat. Ann. § 42:2C-2, limited the definition of "limited liability company" to companies "formed under the laws of the state of Kansas," and thus "suggest[ed] . . . that a court does not have authority to issue a charging order against the interests in LLCs formed under another state's law." 2015 WL 4390071 at *6 (D. Kan. July 15, 2015). The court noted that this apparent gap is a recognized "foreign LLC 'glitch' in the Revised Uniform Limited Liability Company Act." *Id.*

*Vision Marketing*, however, ultimately concluded that this apparent "glitch" did not bar the issuance of charging orders against interests in non-Kansas LLCs. *Id.* It reasoned that "the purpose of a charging order . . . is to execute or collect upon a judgment," and that "[l]imiting the issuance of charging orders under [the Kansas statute] to judgment debtor interests in Kansas-formed LLCs would . . . significantly hinder a judgment creditor in

---

[3]   *See All Saints University of Medicine Aruba v. Chilana*, 2012 WL 6652510 at *11 n.9 (App. Div. Dec. 24, 2012) (recognizing that the New Jersey statute is adopted from the Uniform Act).

Kansas from attempting to collect its judgment from a debtor with interests in foreign LLCs. The judgment creditor would be forced to investigate where each LLC was formed and seek a charging order against the debtor's interest in each of those states." *Id.* The court reasoned that "the Kansas legislature likely did not intend such a result, which could significantly hinder the ability of a judgment creditor to collect its judgments." *Id.* Other courts have tended to agree with the *Vision Marketing* approach, *see Morehouse*, 2017 WL 3411941 at *1 (noting the "absence of any language specifically barring the entry of charging orders against foreign limited liability companies"). Still, as the Brogdons note, there is judicial authority for their interpretation. *See McElroy v. Sumrall*, 2021 WL 1741850 at *1–2 (S.D. Ala. May 3, 2021) ("the defined term "limited liability company" excludes foreign LLC[]s and thus limits the range of entities subject to charging orders to domestic LLCs").

It is possible to design a contraption whereby one presses the definitional button at one end, and a bar on out-of-state charging orders emerges from the other. Like the *Vision Marketing* court, I am persuaded that the New Jersey legislature, in enacting the definitional section, did not intend that result. Such an interpretation would hobble litigants' ability to collect on judgments by requiring that they travel all over the country to obtain charging orders in every state where there is an LLC in which a judgment debtor (who is, by definition, subject to the court's power) might have a transferable interest. Such a result is not so much as hinted at in New Jersey's charging order statute. It is inconsistent with the purpose of a charging order, which is to collect upon a judgment, and inconsistent with the New Jersey legislature's direction in N.J. Stat. Ann. § 42:2C-7 that the charging order statute be read in conjunction with "principles of law and equity." As the SEC notes, equity does not favor an interpretation under which the Brogdons may shelter assets within a maze of foreign LLCs, frustrating the collection of the SEC's judgment.

Even if I conceded the Brogdons' technical point regarding the interpretation of New Jersey's charging order statute, I would not necessarily

be bound by it. Substantial, not perfect, compliance with state law is sufficient under Federal Rule 69. *Arnold v. Blast Intermediate Unit 17*, 843 F.2d 122, 125 (3d Cir. 1988). The public interest in the SEC's fulfillment of its antifraud mission weighs against confining the district court's broad authority in a state-law "procedural straitjacket." *United States v. Kincaid*, 811 F. App'x 362, 365 (7th Cir. 2020) (quoting *Resolution Tr. Corp. v. Ruggiero*, 994 F.2d 1221, 1226–27 (7th Cir. 1993)).

I therefore authorize the issuance of these charging orders against non-New Jersey LLCs, pursuant to the authority of N.J. Stat. Ann. § 42:2C-43, as well as Fed. R. Civ. P. 69.

### C. Whether the Brogdons are Receiving Income from the Entities

The Brogdons argue that they have not received cash distributions from many of the entities and that where they did receive cash distrbutions they paid those distributions to the monitorship plan. That is not, however, a reason to deny issuance of the charging order. As the SEC notes, whether the Brogdons are currently receiving distributions, they might have a transferable interest in the entities which could result in distributions in the future.

### D. Whether the Entities' Assets Have Been Sold

The Brogdons assert that a number of entities have already sold their assets and that the proceeds of the sale went to pay the monitorship plan. They claim the entities will not, going forward, operate as going concerns in which the Brogdons have an interest. If that is the case, then the entities will have no transferable interest to which the order would apply; if it is not, then a charging order is appropriate and potentially efficacious. I thus do not regard this objection as a reason to refrain from issuance of an order.

### E. A Charging Order Against Entities Which Are Currently in or Have Exited From Chapter 11 Bankruptcy

The Brogdons assert that a number of the entities in DE 666-2 have exited from bankruptcy through an approved Chapter 11 plan which bars the Brogdons from recovering distributions. Thus the SEC, they argue, would be similarly barred. The entities to which they refer are Ban NH, LLC, Oak Lake,

LLC, Kenmetal, LLC, and Senior NH, LLC. The Brogdons assert that the proceeds of those four entities are to be deposited in a distribution fund to make payments provided for in their Chapter 11 plans and so they cannot be subject to a charging order.

As the SEC points out, the Brogdons do not make clear whether they have a continuing interest in the entities which have passed through bankruptcy. A charging order will not upend the entities' Chapter 11 plans—all it will do is direct that any distributions for the benefit of the Brogdons, whatever they are, will instead be paid to the SEC. I thus reject this objection.

### F. Whether the Brogdons Have Ownership Interests in Three of the Entities

The Brogdons disclaim any ownership of three of the 60 entities: River Willows NH, LLC (which the Brogdons claim they have no interest in and were not aware of); Oklahoma Investors, LLC (which they claim they have no ownership interest in); and "East Lake Space" (which they claim is not an entity at all, but rather a leased space behind a restaurant).

The SEC, however, explains that all three alleged entities were identified as entities in which the Brogdons have an ownership interest in the Brogdons' tax returns. (Charging Order Reply at 7–8.) I will thus grant the charging order. As the SEC notes, they are in the process of obtaining the Brogdons' underlying 2020 tax information, which may shed light on the issue of the Brogdons' continued ownership of these entities and whether East Lake Space exists as a separate entity. Should those documents or any other information indicate that the Brogdons are correct, the charging order can be vacated on a proper application.

## IV. CONCLUSION

I therefore **GRANT** the SEC's motions for turnover, forbidding transfer of funds, vacatur, and for a charging order.

/s/ Kevin McNulty
_____
**KEVIN MCNULTY**
**United States District Judge**